UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LADONNA HUMPHREY                                                              APPELLANT

v.                                         No. 5:20-cv-5048

ANTHONY CHRISTOPHER and
ABSOLUTE PEDIATRIC THERAPY                                                    APPELLEES

## OPINION AND ORDER

This is an appeal from a decision of the Bankruptcy Court for the Western District of Arkansas. The appellant, Ladonna Humphrey, is the debtor in that bankruptcy proceeding. Appellees Anthony Christopher and his business, Absolute Pediatric Therapy (hereinafter "Absolute"), are creditors of Ms. Humphrey. Ms. Humphrey appeals from the bankruptcy court's decision to approve the sale of her appeal rights in a separate state-court civil proceeding to Mr. Christopher and Absolute. For the reasons given below, the bankruptcy court's decision to approve that sale is REVERSED.

**I.     Background.**

On May 14, 2018, Absolute hired Ms. Humphrey for the position of "community outreach director." She was fired four months later, on September 20. Her termination letter stated that she was fired for failing to meet expectations with respect to her job duties.

Three weeks after firing Ms. Humphrey, Absolute and Mr. Christopher sued her in the Circuit Court of Benton County, Arkansas. *See generally Absolute Pediatric Servs., Inc. v. et al. v. Humphrey*, Case No. 04CV-18-2961 (Benton Cnty. Ark. Cir. Ct.). Their complaint contained many allegations, falling into two main categories. First, it alleged that she had stolen client lists, contact information, and partnership agreements from Absolute and Mr. Christopher. Second, it alleged that after her termination Ms. Humphrey communicated false accusations to many of

1

Absolute's and Mr. Christopher's business partners to the effect that Absolute and Mr. Christopher were engaged in fraudulent and unethical business practices. The complaint brought nine counts against Ms. Humphrey for tortious interference with business expectancies, defamation, breach of contract, misappropriation of trade secrets, conversion, and unjust enrichment. (Some of these counts were duplicated, being brought by both plaintiffs.) Ms. Humphrey then filed a counterclaim in that same action, alleging that Absolute and Mr. Christopher were indeed engaged in Medicaid fraud and that they had also violated certain regulations by hiring a convicted felon. She claimed that her firing violated the False Claims Act because it was done in retaliation for her having previously reported these illegal activities to regulatory authorities.

Predictably, the litigation was very contentious. Numerous cross-motions for contempt and sanctions were filed throughout the first half of 2019, alleging all manner of discovery violations by each side. On April 15 and May 6, 2019, the Circuit Court held an evidentiary hearing on some of these motions. Then, in an August 14, 2019 order, the court ruled that Ms. Humphrey had engaged in "active and aggressive spoliation of evidence," and found her "to be in willful contempt" of its prior orders. As a remedy, the court struck Ms. Humphrey's answer and counterclaim. This resulted in a finding that Ms. Humphrey was liable for the claims in Absolute's and Mr. Christopher's complaint, so a hearing on damages and sanctions was set for September 17, 2019.

At this point, things became somewhat procedurally convoluted. On September 12, 2019, Ms. Humphrey filed a notice of appeal from the August 14 order striking her pleadings. Then, at the damages hearing on September 17, the Court ruled from the bench that the plaintiffs were entitled to recover a judgment against Ms. Humphrey totaling $3,570,977.88: half of it as compensatory damages, and half of it as punitive damages. However, the Court did not file its

written judgment to that effect until September 23. In between these two dates, on September 19, Ms. Humphrey filed for Chapter 7 bankruptcy in federal court. Then, on October 2, the Benton County Circuit Court held another hearing regarding its previous finding of contempt, after which it ordered Ms. Humphrey to serve 10 days in jail: 2 days each for 5 separate instances of contempt. On October 23, Ms. Humphrey filed an amended notice of appeal, this time from the entire Circuit Court proceeding, including the final contempt order. *See generally Humphrey v. Absolute Pediatric Servs., Inc. et al.*, Case No. CV-20-33 (Ark. Ct. App.).

Meanwhile in the bankruptcy proceeding, on December 4, 2019, the Trustee moved to sell all of Ms. Humphrey's claims arising out of or related to the facts and claims in the state court lawsuit, including her appellate rights, for a total of $12,500.00. *See In re Humphrey*, Case No. 5:19-bk-72555, Doc. 46. The party to which the Trustee sought to sell these rights was none other than Absolute. *Id.* Ms. Humphrey opposed this motion, only to the extent that it sought to sell her *defensive* appellate rights—*i.e.*, her right to appeal the striking of her answer and the denial of a jury trial on the issue of damages. *See id.* at Doc. 59. She did not oppose the sale of her *offensive* appellate rights—*i.e.*, her right to appeal the striking of her counterclaim. *See id.* A hearing on this motion was conducted on February 12, 2020, and two days later an order was entered granting the motion in its entirety. *See id.* at Doc. 72. Ms. Humphrey filed an appeal from that order in this Court on March 18, 2020. *See* Case No. 5:20-cv-5048, Doc. 1. On that same day, the Arkansas Court of Appeals entered a stay of the appellate proceeding in her civil case pending resolution of her bankruptcy proceeding. That appeal remains stayed today.

Further muddying the waters, only one week before the bankruptcy court's hearing on the Trustee's motion to sell, the State of Arkansas filed an affidavit in the Pulaski County District Court seeking a warrant for Mr. Christopher's arrest on charges of Medicaid fraud—the very crime

3

of which Ms. Humphrey had been accusing him.  *See State v. Christopher*, Case No. PCS-20-1469 (Pulaski Cnty. Dist. Ct.).  It is unclear to this Court whether any of the parties were aware of this February 5 development on February 12, but at any rate nobody informed the bankruptcy court of this development during the February 12 hearing.  The Pulaski County District Court issued the requested warrant on March 17, 2020, and Mr. Christopher was arrested two days later.  *See id.*  Eventually, on August 26, 2020, a criminal information formally charging Mr. Christopher with Medicaid fraud was filed in the Pulaski County Circuit Court.  *See State v. Christopher*, Case No. 60CR-20-2945 (Pulaski Cnty. Cir. Ct.).

Ms. Humphrey's appeal to this Court from the bankruptcy court's approval of the sale of her state-court appellate rights was briefed throughout the month of May 2020.  *See* Docs. 5, 8–9.  However, on March 31, 2021, this Court entered an opinion and order holding the bankruptcy appeal in abeyance pending the resolution of Mr. Christopher's criminal case.  *See* Doc. 10.  As explained in the final two paragraphs of that opinion:

> If Christopher is convicted of committing the criminal acts Humphrey accused him of, the effect on this case may be profound.  Every court involved in some fashion with the merits of the ongoing civil dispute between Humphrey and Appellees—the Circuit Court of Benton County, Arkansas, the United States Bankruptcy Court for the Western District of Arkansas, and this Court—operates under rules that allow relief when fraud has been committed on the court, or as equity demands.  *See* Ark. R. Civ. P. 55(c) (allowing courts to set aside default judgments on the basis of fraud or misconduct); Fed. R. Civ. P. 60(b)(3), (5), (6) (allowing courts to grant relief from final orders on the basis of fraud, equity, or other reasons justifying relief); Fed. R. Bankr. P. 9024 (applying Federal Rule of Civil Procedure 60 to bankruptcy cases).  If Christopher is convicted, additional briefing may be necessary to determine which courts should take action under these rules.  Further, if Christopher is convicted, Appellees' counsel likely will prefer an opportunity to determine whether the conviction gives rise to professional obligations under Arkansas Rule of Professional Conduct 3.3.  Finally, if Christopher is convicted, it may be difficult to say that his corporate tool, Absolute, purchased any appellate rights in good faith.
>
> If Christopher is acquitted, or if the charges against him are dismissed, additional briefing and oral argument may become necessary in this case.  In light of the

4

> unknowns giving rise to these exceptional circumstances, it is most prudent to hold further proceedings in abeyance at this time, pending Christopher's conviction or acquittal, or dismissal of the Medicaid fraud charges against him.

*See id.* at 5–6.

Mr. Christopher's criminal case languished in the Pulaski County Circuit Court for another two and a half years, with very little activity reflected on the docket beyond various continuances and substitutions of counsel. *See State v. Christopher*, Case No. 60CR-20-2945. Then, on October 5, 2023, Mr. Christopher moved to dismiss the charges against him as a sanction for the state's alleged destruction of impeachment material. In that motion, Mr. Christopher referenced an investigative report from the state attorney general's office, which the state had produced to Mr. Christopher in discovery at some point during the criminal proceeding. In this report, an investigator mentioned having interviewed several individuals on November 13, 2018, including Ms. Humphrey, regarding suspected Medicaid fraud by Mr. Christopher. The investigator also mentioned having received an email from Ms. Humphrey on November 14. Then, in an entry dated November 15, 2018, the investigator noted that an assistant attorney general instructed her to keep only print versions of any emails that Ms. Humphrey sent her and to delete them from her computer in order to make them more difficult to obtain via Freedom of Information Act requests, because this assistant attorney general suspected that Mr. Christopher's attorneys would want to see those emails. In his motion for sanctions, Mr. Christopher alleged that Ms. Humphrey's emails to the investigator had never been provided to him. He argued that Ms. Humphrey was a potential witness in his criminal prosecution, and that this amounted to destruction of materials which he could have used to impeach her credibility at his trial. In its October 11, 2023 response to the motion, the state did not dispute the veracity of the investigator's notes, but argued that Mr. Christopher had suffered no prejudice because it did not intend to call Ms. Humphrey as a witness

and that, regardless, print copies of all such emails had been preserved and provided to Mr. Christopher in discovery.

Then, only two days after filing its response in opposition to Mr. Christopher's motion for sanctions, the state filed a motion to enter *nolle prosequi*. In relevant part, it stated:

> The Office of the Attorney General's Medicaid Fraud Control Unit has had personnel and administration changes since the beginning of the investigation of this case, which was five years ago. The Lead Investigator, the Assistant Attorney General, the Senior Assistant Attorney General and the Deputy Attorney General previously assigned to this case, and referenced in Defendant's Motion, are no longer employed by the Office of the Attorney General. The undersigned Special Deputy Prosecuting Attorney entered her appearance March 7, 2023. The State has made significant efforts to shore up witnesses and evidence in order to fully prosecute this case. However, due to the length of time that has transpired, evidence has become stale, and witnesses have become unavailable. At this point, the State cannot go forward because it is not possible to meet our burden of proof on the charges filed.

*See id.* (paragraph numbers and breaks omitted). Five days later, the state's motion was granted and the charges against Mr. Christopher were dismissed.

The following month, this Court was notified of the dismissal of Mr. Christopher's charges, *see* Doc. 15, and it entered an order lifting the stay and reopening this bankruptcy appeal, *see* Doc. 16. The parties provided supplemental briefing throughout the months of December 2023 and January 2024. Ms. Humphrey has raised three issues on appeal: (1) whether defensive appellate rights are property of the estate; (2) whether the Trustee properly determined whether the sale was in the best interests of the estate; and (3) whether the fact that Mr. Christopher was charged with Medicare fraud was relevant to the value of Ms. Humphrey's counterclaim for damages. *See* Doc. 1, p.1. The matter is now finally ripe for decision.

**II.     Standard of Review.**

A federal district court has jurisdiction to hear appeals from the rulings of a bankruptcy court under 28 U.S.C. § 158. Generally, the district court reviews the bankruptcy court's findings

of fact for clear error and its conclusions of law *de novo*. *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005). However, decisions that are committed to the bankruptcy court's discretion are reviewed for abuse of discretion, which occurs when the bankruptcy court "fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *In re Farmland Indus., Inc.*, 397 F.3d 647, 651 (8th Cir. 2005). The decision to approve a settlement or compromise of a bankruptcy debtor's cause of action is committed to the bankruptcy court's discretion. *See In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997).

**III.    Discussion.**

The Court will begin its analysis with the issue of whether defensive appellate rights are property of the estate. "The nature and extent of the debtor's interest in property are determined by state law." *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir. 1985). "However, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate." *Id.* The federal-law component here is straightforward: to whatever extent state law recognizes a cause of action to be an interest in property, then that interest is included in the bankruptcy estate. *See In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). However, it is a much more nuanced question whether and to what extent Arkansas law recognizes the right of appeal to be a cause of action that is personal property.

In Arkansas, "personal property" has long been understood by courts to include "things in action." *See, e.g.*, *Allen v. Barnett*, 186 Ark. 494, 54 S.W.2d 399, 400 (1932). A "thing in action" has consistently been defined by the Arkansas Supreme Court to mean "the right of bringing an action, or a right to recover a debt or money, or a right of proceeding in a court of law to procure the payment of a sum of money or a right to recover a personal chattel or sum of money by action."

7

*See Bridges v. Shields*, 2011 Ark. 448, at *5, 385 S.W.3d 176, 179–80 (quoting *Gregory v. Colvin*, 235 Ark. 1007, 1008, 363 S.W.2d 539, 540 (1963)).  The Arkansas Court of Appeals has also repeatedly acknowledged that "[b]ankruptcy estate property . . . includes all causes of action the debtor could have brought at the time of the bankruptcy petition." *See, e.g.*, *Hobson v. Holloway*, 2010 Ark. App. 264, at *8, 377 S.W.3d 376, 380; *Bibbs v. Cmty. Bank of Benton*, 101 Ark. App. 462, 466, 278 S.W.3d 564, 566 (2008).  However, none of these formulations appears to contemplate proceeding in a purely *defensive* posture.  Clearly, defending oneself against a lawsuit brought by another party is not "bringing an action" or attempting to "recover a debt or money" or attempting to "procure the payment of a sum of money."  The undersigned is unable to find any Arkansas cases disputing this common-sense notion.  Thus, under Arkansas law, Ms. Humphrey's right to defend herself against the lawsuit that was brought against her is *not* personal property, but the causes of action she asserted in her counterclaim *are* personal property.

However, Ms. Humphrey's appeal of the state-court judgment is unitary, being taken from not only the default judgment that was entered on the claims brought against her, but also from the dismissal of her counterclaims.  As such, her appeal rights have a blended status under Arkansas law, being partly her personal property and partly not.  This Court has found scant caselaw discussing whether blended offensive and defensive appellate rights are property of the bankruptcy estate.  None of those cases is helpful here, because all such cases involved states under whose law defensive appellate rights are personal property.  *See, e.g.*, *In re Croft*, 737 F.3d 372 (5th Cir. 2013) (discussing Texas law); *In re Mozer*, 302 B.R. 892 (C.D. Cal. 2003) (discussing California law).

Ultimately, however, this Court need not decide whether Ms. Humphrey's defensive appellate rights are included in the bankruptcy estate, because even if they are, the bankruptcy court clearly abused its discretion in approving their sale to Absolute.  During the hearing on the

8

Trustee's motion to approve the sale, all parties and the bankruptcy court itself acknowledged that Absolute's obvious motive and intention in purchasing Ms. Humphrey's appellate rights was to then substitute itself in her place and dismiss her appeal. In other words, the sale was effectively a settlement or compromise of Ms. Humphrey's appeal with the opposing party in that civil proceeding. Absolute was paying $12,500.00 in order to guarantee that it would continue to hold a $3,570,977.88 judgment against Ms. Humphrey—a judgment which it was then arguing, and which the bankruptcy court later held, is not dischargeable in bankruptcy. *See Absolute Pediatric Servs., Inc. et al. v. Humphrey*, Case No. 5:19-ap-07070 (W.D. Ark.) (Doc. 55). To approve a settlement or compromise, the bankruptcy court must first determine that the settlement is fair and equitable and in the best interests of the estate. *See In re Martin*, 212 B.R. 316, 319 (B.A.P. 8th Cir. 1997). This sale was obviously none of those things.

After Ms. Humphrey's bankruptcy petition was filed, the Trustee hired the same attorney who had represented Ms. Humphrey in the civil proceeding to represent her in the appeal from that proceeding. *See In re Humphrey*, Case No. 5:19-bk-72555, Docs. 23, 34, 35. Under that agreement, this attorney would not charge any attorney fees for his services, and would charge actual costs only to the extent assets were recovered. *See id.* at Doc. 34, ¶ 7. Court filings indicate that he was hired to pursue Ms. Humphrey's "counterclaim." *See* Case No. CV-20-33 (Ark. Ct. App.) (Feb. 19, 2020 Motion to Stay, ¶ 3). But it is inconceivable how he could have effectively done so without also simultaneously pursuing her defensive appeal—which he had already filed before Ms. Humphrey's bankruptcy petition—given that the money judgment against her and the dismissal of her counterclaim both arose from a single order striking her pleadings in circuit court, and given that any eventual recovery on her counterclaim would necessarily have been offset by any outstanding adverse judgment against her on Absolute's claims in the same proceeding. In

other words, the Trustee had a choice between, on the one hand, pursuing an appeal at no cost to the estate of a $3,570,977.88 judgment against Ms. Humphrey—an appeal which had the potential, however small, of removing that entire liability from the estate's books; or on the other hand, effectively guaranteeing that the estate would include a non-dischargeable debt of $3,558,477.88. The Trustee opted for, and the bankruptcy court approved, the latter course. This cannot possibly have been in the best interest of the estate.

This Court is mindful that when a bankruptcy court considers approving a settlement or compromise, it need not find that the settlement constitutes the best result obtainable, but rather only that "the settlement does not fall below the lowest point in the range of reasonableness." *See Tri-State Fin., LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008). But this settlement falls well below that lowest point. No middle-income rational actor would ever accept a settlement offer of a $3,558,477.88 non-dischargeable debt where the alternative is to appeal a $3,570,977.88 judgment at no personal expense. Accordingly, this Court concludes that the bankruptcy court's decision to approve this sale was based on a "clearly erroneous assessment of the evidence."[1] *Id.*

Absolute and Mr. Christopher claim that Ms. Humphrey never challenged the reasonableness of the settlement amount before the bankruptcy court, and that she has therefore waived this issue for purposes of this appeal. The Court disagrees; it is clear from the audio recording of the hearing on the Trustee's motion that while Ms. Humphrey did not dispute the reasonableness of the settlement amount as to her *offensive* appellate rights, she objected entirely to the sale of her *defensive* appellate rights, and considered them to be essentially priceless as they

---

[1] Given the foregoing analysis, this Court need not reach the issue of whether Mr. Christopher's then-pending criminal charges were relevant to any assessment of the value of Ms. Humphrey's appellate rights.

implicated what her counsel characterized as her fundamental constitutional right to defend herself. Regardless, given the enormous sum at stake and the extremely one-sided nature of this settlement, allowing this sale to stand "would be a plain miscarriage of justice," such that Ms. Humphrey would be permitted to challenge the reasonableness of the settlement for the first time on appeal. *See In re Hervey*, 252 B.R. 763, 767–68 (B.A.P. 8th Cir. 2000).

There is one remaining argument to address, which was raised by Absolute and Mr. Christopher in their briefing on this appeal. They contend that the "finality rule" prevents a court from undoing a completed sale from the estate to a good-faith purchaser absent a stay pending appeal. *See In re Rodriquez*, 258 F.3d 757, 759 (8th Cir. 2001). The idea here is that once property has left the bankruptcy estate courts are unable to supply a remedy as to that property, rendering the issue moot. *See id.* Additionally, "[t]his rule protects the finality of bankruptcy sales and the reasonable expectations of good-faith third-party purchasers." *See id.* This rule has no applicability here, because Ms. Humphrey in fact *did* obtain a stay satisfying all these concerns: she obtained a stay of the very state-court appellate proceedings that are the subject of this sale. Nothing has occurred in that case which would prevent this Court from supplying the remedy that Ms. Humphrey requests. Indeed, not a single brief on the merits has been filed in that matter. Thus the sale can easily be undone without prejudice to any party.

**IV.   Conclusion.**

IT IS THEREFORE ORDERED that the bankruptcy court's February 14, 2020 order granting the Trustee's motion for approval of sale at Case No. 5:19-bk-72555, Doc. 72, is REVERSED. The matter is REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion and order.

IT IS SO ORDERED this 26th day of March, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE